UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| RAUDELL MERCADO, | : | |
| Plaintiff, | : | No. 3:19-cv-913 (KAD) |
| | : | |
| v. | : | |
| | : | |
| MONICA RINALDI, et al., | : | |
| Defendants. | : | |

## INITIAL REVIEW ORDER

**Preliminary Statement**

Plaintiff, Raudell Mercado ("Mercado"), currently confined at Hartford Correctional Center in Hartford, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983, although counsel has since appeared for the Plaintiff. Mercado contends that the defendants, Deputy Commissioner Monica Rinaldi and Does 1-10, have violated his rights to procedural and substantive due process under the Fifth and Fourteenth Amendments and subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Mercado also asserts state law claims for violation of his rights under Article first, sections 8 and 9 of the Connecticut Constitution and for intentional and/or negligent infliction of emotional distress. Although Mercado describes the action as seeking damages and injunctive relief, he includes only requests for compensatory and punitive damages in the prayer for relief. The complaint was received on June 12, 2019, and Mercado's motion to proceed *in forma pauperis* was granted on June 19, 2019.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On November 11, 2017, Mercado was incarcerated as a pretrial detainee at the New Haven Correctional Center.[1] Doc. No. 1, ¶ 11. He asked Officer Smith, the officer manning the

---

[1] The Connecticut Judicial Branch website indicates that, on November 6, 2017, Mercado was sentenced to a term of imprisonment of two years execution suspended and a two-year term of probation. *State v. Mercado*, No. N23N-CR17-0179539-S, www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=c9f33130-42f9-40a2-a7cf-9bc320c6df8c (last visited June 25, 2019). Mercado continued to be held on bond on a second charge for which he was eventually sentenced on December 8, 2017. He was sentenced to a term of imprisonment of fifteen months. *State v. Mercado*, No. TTD-CR16-0108491-T, www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=435b1efa-239a-4a0d-8416-9afb122018ca (last visited June 25, 2019). Thus, for purposes of the Court's review, Mercado was a pretrial detainee until December 8, 2017, five days after the classification hearing at issue here.

control station, for tissues. Officer Smith said there was no tissue. *Id.*, ¶¶ 12-13. Mercado then grabbed some paper towels and Officer Smith got "in plaintiff's face." *Id.*, ¶ 14.

Mercado laughed at Officer Smith's response. Officer Smith said he had no time for Mercado and again got in Mercado's face. Mercado assumes this was an attempt to provoke Mercado to initiate a physical altercation. *Id.*, ¶ 15. Mercado noticed that Officer Smith's hand was near his body alarm. If Officer Smith had activated the alarm, other correctional officers would have been alerted to an assault on staff. *Id.*, ¶ 16. Mercado did not "take the bait." Instead, he began walking away to try to deescalate the situation. *Id.*, ¶ 17. Officer Smith violently pushed Mercado as a further act of provocation. *Id.*, ¶ 18.

Mercado contacted the state police, made coffee, and returned to his cell. *Id.*, ¶ 19. At no time, did Officer Smith activate his body alarm. *Id.*, ¶ 20. No audible alarm was sounded to signal an assault on staff. *Id.*, ¶ 21. After Mercado called the state police to report an assault by Officer Smith, two correctional officers and a lieutenant entered Mercado's cell and told him that he was being immediately taken to Punitive Segregation for allegedly assaulting staff. *Id.*, ¶ 23.

Before the transfer, Mercado was taken to the medical unit because he previously had been diagnosed with bi-polar disorder and attention deficit hyperactivity disorder and the officers feared that Mercado would engage in self-harm. *Id.*, ¶ 24. The state police arrived while Mercado was in the medical unit. He described the assault by Officer Smith to the state police. *Id.*, ¶¶ 25-26. Mercado received a disciplinary charge for assaulting an officer. He spent fourteen days in Punitive Segregation. *Id.*, ¶ 27.

On November 19, 2017, Mercado attended the disciplinary hearing for the charge of assaulting Officer Smith. Although Mercado pled not guilty, the hearing officer found him

guilty of the charge. Mercado was sanctioned with time in Punitive Segregation. *Id.*, ¶ 31.

Following the hearing, Deputy Warden Stacy Memora submitted an Administrative Segregation packet. The request to place Mercado in Administrative Segregation was granted. *Id.*, ¶ 32. On November 23, 2017, Mercado was transferred to Northern Correctional Institution. Upon his arrival he was placed on behavioral observation status and his property was confiscated. *Id.*, ¶ 33.

A hearing on Mercado's placement in Administrative Segregation was held on December 3, 2017. *Id.*, ¶ 34. Hearing Officer Tugi recommended that Mercado's placement be suspended. He found there was insufficient evidence that Mercado actually assaulted Officer Smith. *Id.*, ¶ 35. Director of Population Management Maiga overruled the decision. *Id.*, ¶ 36. Mercado promptly appealed the decision to overrule the hearing officer and continue Mercado in Administrative Segregation. He submitted the appeal to the Deputy Commissioner's Office. *Id.*, ¶ 37.

Neither defendant Rinaldi nor anyone from her office responded to Mercado's appeal for 11 months. *Id.*, ¶ 39. Mercado sent several reminder letters to defendant Rinaldi's office requesting action on his appeal. He received no response to his letters or any acknowledgment that the letters had been received. *Id.*, ¶ 40.

The Administrative Segregation Program has three phases. Phase I lasts 120 days. This term is mandatory and rarely altered, even for good behavior. Phases II and III are 90 days each. Inmates gradually receive additional privileges during Phases II and III. However, the entire program is essentially solitary confinement for at least 22 hours per day. *Id.*, ¶¶ 41-42.

On October 7, 2018, Mercado's appeal was denied. *Id.*, ¶ 43. The defendants claimed

they had just received the appeal that day. No mention was made of Mercado's letters. *Id.*, ¶ 44. Mercado received other disciplinary charges while in Administrative Segregation, causing him to remain on that status until he was released from prison on December 28, 2018. *Id.*, ¶ 46.

**Discussion**

Mercado includes four claims in his Complaint. He alleges that the defendants denied his rights to procedural and substantive due process, to be free from cruel and unusual punishment, and to be free from intentional or negligent infliction of emotional distress.[2]

**Fifth Amendment**

Mercado references the Fifth Amendment for his due process claims. The defendants are all state actors. The Due Process Clause of the Fifth Amendment protects only against actions by federal government actors. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (Fifth Amendment's Due Process Clause only protects citizens against conduct of federal government officials, not state officials). Any purported Fifth Amendment due process claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Mercado's due process claims are cognizable, if at all, under the Due Process Clause of the Fourteenth Amendment.

**Fourteenth Amendment**

---

[2] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are viable federal law claims, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by motion practice. It is further worth noting that the Court's initial review under 28 U.S.C. § 1915A does not preclude any defendant from seeking dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

Mercado's procedural and substantive due process claims are indistinguishable from each other and shall be analyzed together. In both, he challenges the procedures afforded him in connection with his classification hearing. Mercado's claim turns on whether the classification hearing was administrative or whether it was punitive in nature. He asserts that he had a protected liberty interest in having his appeal considered in a timely manner in accordance with the department regulations and that his right to a hearing was impaired when the hearing officer's decision was overruled without explanation or justification.[3]

If the proceeding is punitive in nature, procedural due process requires that a pretrial detainee receive "written notice, adequate time to prepare a defense, a written reason for action taken, and a limited ability to present witnesses and evidence." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 n.3 (2d Cir. 2017) (quoting *Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001)). If, however, the proceeding is administrative, the detainee "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms*, 459 U.S. 460, 476 (1983); *see also Wilkinson*, 454 U.S. at 229 (*Hewitt* sets forth the standard of due process for transfer to administrative segregation as some

---

[3] Mercado alleges that he was required to remain in solitary confinement as a result of the due process violations. At the time of the classification hearing, however, Mercado was a detainee. If he had been a sentenced inmate, the Court would have had to consider the nature of the restraint imposed as a result of the hearing to determine if Mercado had a protected liberty interest warranting protection under the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). *Sandin*, however, does not apply to pretrial detainees. *See Iqbal v. Hasty*, 490 F.3d 143, 163 (2d Cir. 2007) ("[T]he Second Circuit has said that *Sandin* does not apply to pretrial detainees and that, accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardships to state deprivation of a liberty interest protected by procedural due process."), *rev'd on other grounds, Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Thus, the Court does not consider the sanctions when evaluating the due process claim.

notice of charges and opportunity to be heard). The hearing, whether formal or informal, must occur within a reasonable time following the inmate's transfer to administrative segregation. *Hewitt*, 459 U.S. at 476 & n.8.

Thus, the Court first turns to the question of whether the classification hearing was for administrative or punitive purposes. If a pretrial detainee's placement in restrictive housing is reasonably related to a legitimate governmental purpose, it is not considered punitive. *See, Allah*, 876 F.3d at 55. In *Bell v. Wolfish,* 441 U.S. 520 (1979), "the Supreme court recognized that the government has a legitimate interest in the security of prisons and that prison officials should be afforded deference 'in the adoption and execution of policies and practices … needed to preserve internal order and discipline and to maintain institutional security.'" *Id.,* quoting *Bell v. Wolfish,* at 547. "Accordingly, in prior summary orders, we have found measures similar to Administrative Segregation not to violate substantive due process where prison officials subjected pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose. *See Cabral v. Strada*, 513 F. App'x. 99, 103 (2d Cir. 2013) (rejecting substantive due process claim where pretrial detainees were placed in segregated housing unit after prison officials received reports from confidential informants that, *inter alia*, a "green light" had been issued by rival gang members to physically attack the detainees on sight in the prison); *Taylor v. Comm'r of N.Y.C. Dep't of Corr.*, 317 F. App'x. 80, 82 (2d Cir. 2009) (rejecting substantive due process claim where pretrial detainee was placed in segregated housing unit after being "implicated in an assault against an inmate who subsequently died")." *Allah*, 876 F.3d at 55-56.

Here, Mercado alleges that Department of Correction regulations require that inmates found to have assaulted staff be placed in Administrative Segregation and that the request for consideration of Administrative Segregation confinement was submitted after he was found guilty of the disciplinary charge for assaulting staff. Doc. No. 1, ¶¶ 28, 32. There are no allegations that the defendants acted with a punitive motive or allegations from which such motive might be inferred. Nor are there allegations that the policy at issue is inadequate to support a concern that the detainee posed a risk to institutional security. Under a broad and liberal reading of the Complaint, Mercado's classification hearing and resulting classification were for administrative purposes and were not punitive in nature.

Accordingly, Mercado was entitled only to the protections in *Hewitt,* timely notice and an opportunity to be heard. He does not allege that he did not receive timely notice and/or an opportunity to be heard. *Hewitt* does not require a statement of reasons for the decision or a timely decision of his appeal. Indeed, the Court has found no case in which it was held that due process requires a timely decision of an appeal from a prison classification hearing.

**Eighth Amendment**

Mercado cites the Eighth Amendment's Cruel and Unusual Punishment Clause in his third count. He alleges that the defendants' actions caused him to be confined in Administrative Segregation for nearly a year thereby subjecting him to cruel and unusual punishment. The Eighth Amendment affords protection only for sentenced inmates. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (pretrial detainee's claims relating to conditions of confinement are governed by Fourteenth Amendment Due Process Clause, not the Eighth Amendment Cruel and Unusual Punishment Clause). Mercado was sentenced on December 8, 2017. Thus, the Court

8

considers this claim to encompass the period commencing on December 8, 2017.

To establish an Eighth Amendment violation, Mercado must allege facts showing that the conditions of his confinement resulted in a deprivation that was sufficiently serious, and the defendant acted with deliberate indifference to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be sufficiently serious, the conditions of his confinement must have deprived Mercado of "the minimal civilized measure of life's necessities" or constitute an "unquestioned and serious deprivation of basic human needs." *Id.* at 834. These needs include "food, clothing, medical care, and safe and sanitary living conditions." *Walker v. Schult*, 711 F.3d 119, 125 (2d Cir. 2013) (citation and internal quotation marks omitted). The Supreme Court has explained that "the Constitution does not mandate comfortable prisons," and "conditions [that] are restrictive and even harsh … are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981).

On this claim, Mercado alleges that he was confined in his cell for at least 22 hours per day. He describes no other condition of his confinement in Administrative Segregation. Although, "as a general rule, 'administrative segregation conditions, even though restrictive and harsh, are insufficient to establish Eighth Amendment violations,'" courts have held that prolonged solitary confinement may violate the Eighth Amendment. *Smith v. Annucci*, 2019 WL 539935, at *6; see also Peoples v. Annucci*, 180 F. Supp. 3d 294, 299 (S.D.N.Y. 2016) (describing deleterious effects of solitary confinement even after brief periods). Mercado alleges that he was held in solitary confinement for his entire period of Administrative Segregation. He sent letters to defendant Rinaldi complaining about his placement and the delay in considering his appeal. These allegations, in combination, state a plausible Eighth

Amendment claim.

**Request for Relief**

Mercado seeks damages from the defendants but does not specify whether he names them in individual or official capacities. The Eleventh Amendment bars claims for damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Mercado has alleged no facts suggesting that Connecticut has waived this immunity. Accordingly, any claims for damages against the defendants in their official capacities are not cognizable.

**Orders**

For all the foregoing reasons, the Eighth Amendment conditions of confinement claim will proceed against defendant Rinaldi in her individual capacity.[4] In addition:

(1) **The Clerk shall** verify the current work address for defendant Rinaldi with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to her at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in her individual capacity and the defendant shall be

---

[4] The court notes that counsel has recently appeared in this matter on behalf of the Plaintiff. No order herein shall preclude counsel from seeking to amend the complaint to include additional constitutional claims whether dismissed herein or not.

required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(3) The defendant shall file her response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If she chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claim recited above. She also may include all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the **Clerk is hereby directed to docket separately**.

(8) Mercado has included ten John Doe defendants in the case caption but alleges no facts against them in the complaint. To the extent that any of these defendants are involved in his Eighth Amendment claim, Mercado is directed to file an Amended Complaint on or before August 15, 2019, identifying the defendants and alleging facts demonstrating their involvement.

Failure to timely file an Amended Complaint complying with this Order may result in the dismissal of all Doe defendants.

      **SO ORDERED** at Bridgeport, Connecticut, this 11th day of July, 2019.

                                          /S/Kari A. Dooley
                                          Kari A. Dooley
                                          United States District Judge